UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
——————————————————————————x

Robert Mothersell, individually and on behalf of all others
similarly situated,

                      Plaintiff,

-against-

City of Syracuse; Stephanie A. Miner (Mayor),
Frank L. Fowler (Chief of Police), Matthew J. Driscoll,
(former Mayor), Gary Miguel (former Chief of Police),
in their individual capacities; and Capt. Timothy Laun,
Lt. Michael Glavin, Sgt. Michael Hartnett, Sgt. James Staub,
Det. Susan Izzo, Det. Matthew MacDerment, Det.
David Armstrong, Det. David Jones, John and
Jane Does Syracuse Police Officers,
individually and in their official capacities,

                      Defendants.

——————————————————————————x

Civ. A. No. 08-cv-0615
(NAM) (GHL)
ECF case

FIRST AMENDED
CLASS ACTION
COMPLAINT

TRIAL BY JURY
DEMANDED

## Introduction

1.     Plaintiff Robert Mothersell ("Plaintiff") brings this action on behalf of himself as a

named Plaintiff class representative and the putative Plaintiff class, by his attorneys against

individual police officers, supervisors, and the City of Syracuse and municipal leaders for

damages arising out a) of an aggravated sexual assault, other unconstitutional policies and

actions, and common law claims arising out of police misconduct by defendants during the

execution of an "All Persons Present" warrant on February 23, 2006, at 114 Isabella Street, in the

City of Syracuse, County of Onondaga, at approximately 5:50 p.m.; and b) for other similar

incidents conducted by defendants against similarly situated persons pursuant to defendants'

unlawful policy, practice and custom with regard to the execution of "All Persons Present"

warrants and unlawful strip searches and body cavity searches conducted in connection with the execution of such warrants.

2.      Defendants have instituted and continue to institute a policy, practice and custom pursuant to which strip search and body cavity searches are routinely conducted on persons present at locations where "All Persons Present" warrants are executed, wholly absent particularized probable cause, reasonable cause, reasonable suspicion or a valid warrant permitting such searches as required by the federal and New York State constitutions. Defendants' blanket policy, practice and custom of conducting strip search and body cavity searches in connection with the execution of such warrants has inflicted injury on hundreds and possibly thousands of persons.  Conducting such strip searches and body cavity searches on persons, including the named Plaintiff and those similarly situated, without particularized probable cause, reasonable cause, reasonable suspicion or a valid warrant permitting such searches was and is humiliatingly invasive, unconstitutional and prohibited by settled law in this Circuit and the State of New York.

3.      The Plaintiff and Plaintiff class seek (i) declaratory judgment that conducting a strip search and/or body cavity search of a person present at the execution of a "All Persons Present" warrant undertaken absent a valid warrant permitting such searches or particularized probable cause, reasonable cause or reasonable suspicion that the person is concealing a weapon or unlawful contraband is unconstitutional; (ii) declaratory judgment that a body cavity search that involves the removal of an object secreted within a body cavity may only be conducted pursuant to a warrant authorizing such an intrusion; (iii) an order enjoining defendants from implementing their policy, practice and custom of routinely conducting strip searches and body cavity searches on persons present at locations where "All Persons Present" warrants are executed, wholly absent

particularized probable cause, reasonable cause, reasonable suspicion or a valid warrant permitting such searches, and enjoining defendants from conducting body cavity searches without warrants; (iv) an order requiring defendants to amend their policy manual concerning strip searches and body cavity searches to comply with federal and state law regarding such searches; (v) compensatory damages for the injuries caused by defendants' unlawful conduct; (vi) punitive damages assessed to deter such intentional or reckless deviations from well-settled constitutional law;[1] (vii) interest; (viii) costs and expenses; and (ix) attorneys' fees.

## <u>Jurisdiction</u>

4.     Plaintiff and the putative class bring this action against defendants to redress the deprivation of rights secured by the Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution, 42 U.S.C. Section 1983, the New York State Constitutional, Art. 1, Section 12, and the common law.

5.     The named Plaintiff is a citizen of New York.  Each defendant is, upon information and belief, a citizen of New York.  The matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

6.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. Subsections 1331, 1332, 1343 and 2201.

7.     Plaintiff and the putative class also invoke supplemental jurisdiction of this Court over their claims against defendants for state constitutional and common law violations pursuant to 28 U.S.C. Section 1367 as they form part of the same case or controversy.

8.     The cause of action arose in the City of Syracuse, located in the Northern District of New York.  Therefore, venue is proper under 28 U.S.C. Section 1391(b).

---

[1] The punitive damages claim is not brought against the municipality or the defendants in their official capacities.  <u>See</u> Order, March 30, 2009.

**Jury Demand**

9.      Plaintiff and the putative class demand a trial by jury in this action.

**Parties**

**Named Plaintiff**

10.     Plaintiff Robert Mothersell is and was at all times mentioned herein an adult citizen of the United States and is a resident of the State of New York.

11.     At the time this action was commenced, Plaintiff was incarcerated at the Bare Hill Correctional Facility located at Caller Box 20, 181 Brand Road, in the Town of Malone, New York 12953.

12.     Defendant City of Syracuse is and was at all relevant times herein a municipal corporation of the State of New York.

13.     Defendant Stephanie A. Miner has been since on or about January 9, 2010, the elected Mayor of Syracuse, located at 300 City Hall, Syracuse, New York 13202 under the city charter and was and is responsible, in part, for authorizing all policies enacted and ensuring that said policies are not contrary to any constitution and/or statute of the United States or the State of New York.

14.     Defendant Mathew J. Driscoll was at all relevant times herein until on or about January 8, 2010, the elected Mayor of the City of Syracuse, located at 300 City Hall, Syracuse, New York 13202 under city charter and was responsible, in part, for authorizing all policies enacted and ensuring that said policies are not contrary to any constitution and/or statute of the United States or the State of New York.

4

15.     Defendant Frank L. Fowler has been since on or about January 8, 2010, the Chief of
Police of the Syracuse Police Department located at 511 South State Street, Syracuse, New York
13202, with responsibility for operating, maintaining and securing the constitutional and
statutory rights of the people within the city of Syracuse.  As Chief of the Police Department and
as the Chief Executive Officer of the Syracuse Police Department, defendant manages its day-to-
day operations and executes all policies within the Syracuse Police Department.  In addition, as
Chief of Police, defendant is responsible for assuring that defendant officers are informed of all
policies and procedures, and that they adhere to proper protocol in the execution of any and/or all
policies and procedures within the Syracuse Police Department.  He is accountable to the Mayor
of Syracuse and the Common Council of the City of Syracuse.

16.     Defendant Gary Miguel was at all relevant times herein until on or about January 8, 2010,
the Chief of Police of the Syracuse Police Department located at 511 South State Street,
Syracuse, New York 13202, with responsibility for operating, maintaining and securing the
constitutional and statutory rights of the people within the city of Syracuse.  As Chief of the
Police Department and as the Chief Executive Officer of the Syracuse Police Department,
defendant managed its day-to-day operations and executed all policies within the Syracuse Police
Department.  In addition, as Chief of Police, defendant was responsible for assuring that
defendant officers were informed of  all policies and procedures, and that they adhered to proper
protocol in the execution of any and/or all policies and procedures within the Syracuse Police
Department.  He was accountable to the Mayor of Syracuse and the Common Council of the City
of Syracuse.

17.     Defendant Capt. Timothy Laun was at all relevant times herein Captain of the Syracuse
Police Department, located at 511 South State Street, Syracuse, New York 13202 with

responsibility for operating, maintaining and securing the constitutional and statutory rights of the people within the city of Syracuse.

18.     Defendant Lt. Michael Glavin was at all relevant times herein Lieutenant of the Syracuse Police Department, located at 511 South State Street, Syracuse, New York 13202, with responsibility for operating, maintaining and securing the constitutional and statutory rights of the people within the city of Syracuse.

19.     Defendant Sgt. Michael Hartnett was at all relevant times herein Sergeant of the Syracuse Police Department, located at 511 South State Street, Syracuse, New York 13202, with responsibility for operating, maintaining and securing the constitutional and statutory rights of the people within the city of Syracuse.

20.     Defendant Sgt. James Staub was at all relevant times herein Sergeant of the Syracuse Police Department, located at 511 South State Street, Syracuse, New York 13202, with responsibility for operating, maintaining and securing the constitutional and statutory rights of the people within the city of Syracuse.

21.     Defendant Det. Matthew MacDerment was at all relevant times herein Detective of the Syracuse Police Department, located at 511 South State Street, Syracuse, New York 13202, with responsibility for operating, maintaining and securing the constitutional and statutory rights of the people within the city of Syracuse.

22.     Defendant Det. David Armstrong was at all relevant times herein Detective of the Syracuse Police Department, located at 511 South State Street, Syracuse, New York 13202, with responsibility for operating, maintaining and securing the constitutional and statutory rights of the people within the city of Syracuse.

23.     Defendant Det. David Jones was at all relevant times herein Detective of the Syracuse Police Department, located at 511 South State Street, Syracuse, New York 13202, with responsibility for operating, maintaining and securing the constitutional and statutory rights of the people within the city of Syracuse.

24.     Defendant Det. Susan Izzo was at all relevant times herein Detective of the Syracuse Police Department, located at 511 South State Street, Syracuse, New York 13202, with responsibility for operating, maintaining and securing the constitutional and statutory rights of the people within the city of Syracuse.

25.     Defendants John and Jane Does Syracuse Police Officers were at all relevant times herein police officers of the  Syracuse Police Department, located at 511 South State Street, Syracuse, New York 13202, with responsibility for operating, maintaining and securing the constitutional and statutory rights of the people within the city of Syracuse.  They, in addition to the named defendants, taught, implemented, enforced and/or effectuated the strip search and body cavity search policy that is the subject of this action.  Plaintiff and the putative class are unable to determine the names of these defendants at this time and thus sue them under this fictitious designation.

26.     Defendants Det. MacDerment, Det. Armstrong, Det. Jones and Det. Izzo are sued individually and in their official capacities.

27.     Defendants Capt. Laun, Lt. Glavin, Sgt. Hartnett and Sgt. Staub supervise Det. Armstrong, Det. Jones, and Det. Izzo who unlawfully violated Plaintiff's rights. They are sued both individually and in their official capacities.

28.     Defendants John and Jane Does Syracuse Police Officers are sued both individually and in their official capacities.

7

29.     Defendants Gary Miguel and Frank L. Fowler supervise all defendant officers named herein.   They are sued in their individual capacities.

30.     Defendants Mathew J. Driscoll and Stephanie A. Miner were at relevant times herein responsible, in part, for authorizing all policies enacted and ensuring that said policies are not contrary to any constitution and/or statute of the United States or the State of New York.   They are sued in their individual capacities.

31.     Together, the City of Syracuse, Stephanie A. Miner, Mathew J. Driscoll, Gary Miguel and Frank L. Fowler are the municipal defendants.

32.     At all times pertinent hereto, defendants were employed by the City of Syracuse and/or the City of Syracuse Police Department.

33.     At the time of the alleged incidents at all times pertinent hereto, defendants acted within the scope of their employment.

34.     At the time of the alleged incidents at all times pertinent hereto, defendants acted under color of law, of a statute, ordinance, regulation, custom, or usage.

## Facts

### Named Plaintiff's Facts

35.     On or about the first week of February through the third week of February, 2006, Det. Izzo commenced an investigation into criminal activity taking place at the location of 114 Isabella Street in the City of Syracuse.

36.     On February 23, 2006, Judge Dougherty of the City of Syracuse, City Court, issued a "All Persons Present" search warrant for the above location.  The search warrant that was issued did not authorize a strip search or body cavity search of Plaintiff or any other person.  The search

warrant that was issued did not authorize the removal of any object from the body cavity of any person present.

37.     On the same day around 5:26 p.m., this warrant was executed by the City of Syracuse Police Department and the Emergency Response Team.

38.     The legal tenant of the targeted location was Thomas Rushlow, and the basis for probable cause for issuing said search warrant was the alleged illegal sales of narcotics by the tenant, Thomas Rushlow, and another unknown person, to an unknown informant at Rushlow's residence.

39.     At no time during the investigation was Plaintiff named in any investigation reports for any criminal activity at the location 114 Isabella Street in the city of Syracuse.  Plaintiff was not identified in the "All Persons Present" warrant issued for 114 Isabella Street.

40.     On the above date, Plaintiff was at the targeted location visiting Thomas Rushlow.  At approximately 5:25 p.m., Plaintiff heard what he thought to be a gunshot coming from the porch. Plaintiff, being scared for his life and not having any knowledge of what was taking place, ran to his friend's bedroom to lie in his bed and pretended to be asleep.

41.     At this time, Defendant Det. MacDerment acting under color of his authority as a police officer, and without just cause or provocation, willfully and maliciously snatched Plaintiff off from the bed by his shirt and unmercifully threw him to the floor on his stomach with such force that it knocked the wind out of him and caused Plaintiff to lose his breath, thereby inflicting upon Plaintiff cruel and unusual treatment violating his protected rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution and the state constitution.

42.     Defendant Det. MacDerment then placed his knee on Plaintiff's neck causing his bones to crack resulting in sharp pain to his neck and then ordered him to place his hands behind his back

thereby inflicting upon Plaintiff treatment violating his protected rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution and the state constitution.

43.     Plaintiff complied while defendant Det. MacDerment placed plastic restraints on his wrists that were so tight that it blocked circulation of his blood to flow properly to his hands causing numbness and pain, thereby inflicting upon Plaintiff treatment violating his protected rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution and the state constitution.

44.     Shortly thereafter, Defendants Det. Armstrong and Det. Jones acting in concert and under color of their authority as police officers, and without just cause or provocation, willfully and maliciously forced the Plaintiff to his feet by hyper-extending Plaintiff's shoulders by lifting upward on the plastic restraint causing severe pain to his shoulders and joints violating his protected rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution and the state constitution.

45.     Defendants Det. Armstrong and Det. Jones acting in concert and under color of their authority as police officers, and without just cause or provocation then ordered Plaintiff into the bedroom, and while leaving the door open for everyone in the vicinity to view, ordered him to remove his clothing, ordered him to lift his scrotum, and ordered him to bend over and "spread his cheeks" causing Plaintiff to feel unpleasant, embarrassed, repulsive, humiliated, and dehumanized, violating the sanctity of his person and his protected rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution and the state constitution.

46.     Upon spreading his buttocks, defendant Det. Jones grabbed Plaintiff's left arm and placed his hand on Plaintiff's back which prevented him from standing up while defendant Det. Armstrong grabbed Plaintiff's right arm and forced it backwards and up causing it to

hyperextend placing Plaintiff in a locked position causing severe pain to his right shoulder and joint, thereby inflicting upon Plaintiff cruel and unusual treatment and causing him to feel unpleasant, embarrassed, repulsive, humiliated, and dehumanized, violating the sanctity of his person and his protected rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution and the state constitution.

47.     While Plaintiff was forced in this locked, bent over position, and naked nonetheless, he observed, from between his legs, defendant Det. Armstrong grab a plastic coat hanger from off the nearby bed, which he used to commit aggravated sexual assault on the Plaintiff by inserting it in Plaintiff's anus and scraping it down and around Plaintiff's rectum area causing pain, irritation, mental anguish and further causing him to feel unpleasant, embarrassed, repulsive, humiliated, and dehumanized, violating the sanctity of his person and his protected rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution and state constitution.

48.     Defendants Det. Armstrong and Det. Jones allowed Plaintiff to stand in an upright position by removing his hand from the middle of Plaintiff's back and letting go of Plaintiff's arms. At this time Plaintiff was ordered to get dressed and escorted into the back of a paddy wagon.  At no time did Plaintiff offer any resistance to the treatment he received. These actions by defendants Det. Armstrong and Det. Jones violated Plaintiff's protected rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution and state constitution.

49.     At all times pertinent to these allegations, Plaintiff was unarmed and did not pose a threat of death or grievous bodily injury to defendants.  Plaintiff did not pose any threat to defendants.

50.     These actions taken by defendants Dets. MacDerment, Armstrong and Jones were taken without any lawful authority under a lawfully granted warrant that authorized a strip search, a body cavity search and/or a removal of an item from Plaintiff's body cavity.   They lacked particularized probable cause, reasonable cause, or reasonable suspicion to search Plaintiff in any way.

51.     At no time pertinent hereto did defendants Det. MacDerment, Det. Armstrong, Det. Jones or Det. Izzo, or any other defendant officers, have probable cause to believe Plaintiff had committed, was committing, or was about to commit a crime to justify the sexual assault he endured.

52.     Defendant Det. Izzo, acting in concert and under color of her authority as a police officer, and without just cause or provocation, failed, refused and neglected to exercise her authority as a supervising officer in preventing this aggravated sexual assault by not reviewing the search warrant with the defendant officers to ascertain what type of search would be conducted on individuals found within the residence and who were not engaging in criminal activity or under arrest during the execution of the warrant; by not requiring that particularized probable cause, reasonable cause, or reasonable suspicion to search Plaintiff be present; and by permitting the search of Plaintiff under the defendants' policy, practice and custom pursuant to which strip search and body cavity searches are routinely conducted on persons present at locations where "All Persons Present" warrants are executed, wholly absent particularized probable cause, reasonable cause, reasonable suspicion or a valid warrant permitting such.

53.     Defendants Det. Armstrong, Det. Jones, and Det. Izzo acting in concert and under color of their authority as police officers, and without just cause or provocation failed, neglected, and refused to follow proper protocol outlined in their operations manual governing strip searches

and body cavity searches, and in so doing, committed and/or allowed the crime of sexual assault on Plaintiff.

54.     The defendants' actions against Plaintiff were taken pursuant to defendants' unlawful policy, practice and custom pursuant to which strip search and body cavity searches are routinely conducted on persons present at locations where "All Persons Present" warrants are executed, wholly absent particularized probable cause, reasonable cause, reasonable suspicion or a valid warrant permitting such searches as required by the federal and New York State constitutions.

55.     At this point, Plaintiff's injury consisted of numbness in his wrist, excruciating pain to his shoulders, and discomfort in and around his rectum.  In addition, Plaintiff sustained mental and emotional stress.  At no time did defendants Det. MacDerment, Det. Armstrong, Det. Jones or Det. Izzo offer Plaintiff medical attention for the injuries he sustained, causing deprivation of his rights secured to him by the United States Constitution and the state constitution.

56.     Defendants Capt. Laun, Lt. Glavin, Sgt. Hartnett and Sgt. Staub, acting in concert and under color of their authority as police officers, and supervisors of defendants Det. MacDerment, Det. Armstrong, Det. Jones and Det. Izzo, failed, neglected and refused to review the warrant with defendant officers to ascertain what type of search would be conducted on individuals found in the targeted location who were not under arrest or engaging in criminal activity; failed to require that particularized probable cause, reasonable cause, or reasonable suspicion to search Plaintiff be present; and permitted the search of Plaintiff under the defendants' policy, practice and custom pursuant to which strip search and body cavity searches are routinely conducted on persons present at locations where "All Persons Present" warrants are executed, wholly absent particularized probable cause, reasonable cause, reasonable suspicion or a valid warrant permitting such searches.

57.     Defendants Capt. Laun, Lt. Glavin, Sgt. Hartnett and Sgt. Staub, acting in concert and under color of their authority as police officers, and supervisors of defendants Det. MacDerment, Det. Armstrong, Det. Jones and Det. Izzo, failed, neglected and refused to explain to defendant officers that under no circumstances were strip searches and body cavity searches to be conducted at the residence and that all searches would be made in compliance with the policy and procedures outlined in the Syracuse Police Operations Manual governing strip searches and body cavity searches.  They failed, neglected and refused to review the warrant with defendant officers to ascertain what type of search would be conducted on individuals found in the targeted location who were not under arrest or engaging in criminal activity; failed to  require that particularized probable cause, reasonable cause, or reasonable suspicion to search Plaintiff be present; and permitted the search of Plaintiff under the defendants' policy, practice and custom pursuant to which strip search and body cavity searches are routinely conducted on persons present at locations where "All Persons Present" warrants are executed, wholly absent particularized probable cause, reasonable cause, reasonable suspicion or a valid warrant permitting such searches.

58.     Defendants Capt. Laun, Lt. Glavin, Sgt. Hartnett and Sgt. Staub, acting in concert and under color of their authority as police officers, and supervisors of defendants Det. MacDerment, Det. Armstrong, Det. Jones and Det. Izzo, failed, neglected and refused to enforce the policies which govern strip searches and body cavity searches as outlined in the Syracuse Police Operations Manual, and in so doing, acknowledged and approved the misconduct of excessive force and sexual assault committed by defendant officers, thereby violating Plaintiff's rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution.

59.     Defendants Capt. Laun, Lt. Glavin, Sgt. Hartnett and Sgt. Staub, acting in concert and under color of their authority as police officers, and supervisors of defendants Det. MacDerment, Det. Armstrong, Det. Jones and Det. Izzo, failed, neglected, and refused to exercise their authority as supervising officers in preventing the excessive force and sexual assault inflicted upon Plaintiff.

60.     Defendants Gary Miguel and Frank L. Fowler acknowledged, through the enforcement of these policies, the unconstitutionality outlined in the Syracuse Police Department Operations Manual governing strip searches and body cavity searches and failed, neglected and refused to modify these policies to conform to the constitutional and statutory rights of Plaintiff and the citizens of Syracuse, and thus, condoned the excessive force, sexual assault, and police misconduct by defendant officers as outlined in this complaint.

61.     Defendants Gary Miguel and Frank L. Fowler failed in their duties as Chief of Police to provide adequate training to defendant officers to assure protection from violations of the constitutions, laws, and statutes of this state and the United States to Plaintiff and the citizens of the city of Syracuse.

62.     Defendants Matthew Driscoll and Stephanie A. Miner failed, neglected, and refused to properly review all policies within the Syracuse Police Department to guarantee that said policies were not contrary to the United States Constitution, New York State Constitution and statutes of this state and that such policies would not violate the rights of the Plaintiff and the citizens of the city of Syracuse through police misconduct.

63.     On May 15, 2006, a complaint was officially filed with the Citizens Review Board and a Notice of Claim was given to the City of Syracuse by certified mail, return receipt requested. This complaint and notice set forth information underlying Plaintiff's claim against the City of

Syracuse and its agents.  Thus, prior to the institution of this action and within ninety (90) days from the date when the causes of action accrued herein, a notice of claim and intention to sue was duly served upon and filed with the City of Syracuse on behalf of plaintiff; this action was not commenced until the expiration of thirty (30) days after such notice of claim and intention to sue was presented and the City of Syracuse has neglected and/or refused to make adjustment or payment thereon, and this action is being commenced within one year and ninety days after the causes of action accrued herein.

64.     Det. Armstrong and the other defendant officers acted with actual malice toward Plaintiff and with willful and wanton indifference to and deliberate disregard for the statutory and constitutional rights of Plaintiff.  Det. Armstrong's actions and the actions and inactions of the other defendant officers constitute unlawful search and seizure, unreasonable and excessive use of force and deprivation of liberty without due process of law.

65.     Upon information and belief, at all times pertinent hereto, the City of Syracuse implemented unconstitutional policies and permitted and tolerated a pattern and practice of unlawful search and seizure and the unreasonable use of force by police officers of Syracuse.

66.     Upon information and belief, the City of Syracuse has maintained a system of review of police conduct, which is so untimely and cursory as to be ineffective and to permit and tolerate the unlawful searches and seizures, and unreasonable and excessive force by police officers.

67.     The acts, omissions, systematic flaws, policies, and customs of the City of Syracuse caused police officers of Syracuse to believe that the unlawful search and seizures and excessive and unreasonable use of force would not be aggressively, honestly, and properly investigated, with the foreseeable result that officers are more likely to conduct unlawful search and seizures and use excessive or unreasonable force against Plaintiff and others in the future.

68.     On November 26, 2006, Plaintiff attempted to resolve this matter with an out-of-court settlement by way of letter to Joseph W. Barry, III, Senior Corporation Counsel for the City of Syracuse.

69.     On December 7, 2006, Plaintiff received a letter in response to his attempt to settle this matter by Mary Anne Doherty, Assistant Corporation Counsel for the City of Syracuse. Her letter advised the Plaintiff that the City of Syracuse was not willing to offer any monetary settlement for his claim against the city.

70.     To date, no compensation has been offered by the City of Syracuse in response to this claim.

**Relevant Legal Developments in the Named Plaintiff's Case**

71.     By decision dated April 1, 2010, the Court of Appeals of the State of New York granted Plaintiff's motion to suppress in his criminal case arising out of the events of February 23, 2006 described above, and dismissed the indictment against him.  See People v. Mothersell, 14 N.Y.2d 358 (N.Y. 2010).

72.     Applying the Fourth Amendment to the United States Constitution and Article 1, Section 12 of the New York State Constitution, the Court of Appeals held that the "All Persons Present" warrant executed on February 23, 2006 described above failed to meet the constitutional standard required for such a warrant because it lacked sufficient specificity, including only one statement "even purporting to justify the issuance of an all-persons-present warrant."

73.     Of the factual and procedural record in the case, the Court of Appeals wrote:

> The [County] court directed a hearing upon the disputed factual issue raised in connection with the motion's second branch, namely, whether there had been a body cavity search, as defendant alleged, or merely a strip search, as the People contended.

At the hearing, one of the officers who executed the warrant testified that he searched defendant solely pursuant to what he understood to be the warrant's authority; he acknowledged that he had no independent basis for an arrest and, in fact, said that defendant was not under arrest at the time of the search. He also stated that he had taken part in the execution of hundreds of all-person-present warrants and that persons were routinely strip-searched pursuant to such warrants and required to facilitate the examination of their anal and genital cavities. The officer said that defendant was subjected to such a search, during which he was required to lift his scrotum and then to bend over to expose his anal cavity. The incriminating evidence was discovered in the course of the latter exercise.

74.    The testimony referred to by the Court of Appeals in the <u>Mothersell</u> state criminal proceeding was given by Det. David Armstrong at a hearing on May 24, 2006.

75.    The Court of Appeals stated of the unlawful strip search and body cavity search:

We have held that a post-arrest strip search must be based upon reasonable suspicion that an arrestee is hiding contraband beneath his or her clothing, and that a search involving visual examination of an arrestee's anal and genital cavities -- a distinctly elevated level of intrusion, which must be separately justified -- may not be performed except upon a "specific, articulable factual basis supporting a reasonable suspicion to believe the arrestee secreted evidence inside a body cavity" (*People v Hall, 10 NY3d 303, 310-311, 886 N.E.2d 162, 856 N.Y.S.2d 540 [2008]*, cert denied    U.S.   , 129 S Ct 159, 172 L. Ed. 2d 241 *[2008])*.  In this connection, we stressed in language particularly resonant here that "visual cavity inspections . . . cannot be routinely undertaken as incident to all drug arrests or permitted under a police department's blanket policy that subjects persons suspected of certain crimes to these procedures. *There must be particular, individualized facts known to the police that justify subjecting an arrestee to these procedures* (*see generally People v McIntosh, 96 NY2d 521, 525, 755 N.E.2d 329, 730 N.Y.S.2d 265 [2001])*. Our precedent on this point is unequivocal: the police are required to have 'specific and articulable facts which, along with any logical deductions, reasonably prompted th[e] intrusion (*People v Cantor, 36 NY2d 106, 113, 324 N.E.2d 872, 365 N.Y.S.2d 509 [1975])*, although they are allowed to 'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person' (*United States v Arvizu, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 [2002]* [internal quotation marks omitted]." (*id. at 311* [emphasis added]).

Thus, even where there is probable cause for an arrest, and a suspect has been arrested -- something that had not yet occurred at the time of the search of defendant -- there must, in addition to the predicate for the arrest, be grounds to justify the very significant intrusion of a strip or visual body cavity search Footnote 1] It is not enough that there is probable cause to suppose that a person

possesses contraband or that pursuant to a warrant there may exist grounds for a non-strip search; where a strip search is to be performed, there must also exist "particular, individualized facts known to the police that justify subjecting an arrestee to these procedures" (*id*.), i.e., specific facts to support a reasonable suspicion that a particular person has secreted contraband beneath his or her clothes or in a body cavity. Such a predicate did not exist at the time that the present warrant was sought and, accordingly, these extraordinary intrusions could not have been within any authority the warrant was capable of conferring.

A search warrant exists and is required not simply to permit, but to circumscribe police intrusions (*see Marron v United States, 275 U.S. 192, 196, 48 S. Ct. 74, 72 L. Ed. 231, Treas. Dec. 42528 [1927]* ["nothing is left to the discretion of the officer executing the warrant"]). This warrant, even if valid for other uses, would fail of its essential limiting purpose if it were understood to afford plenary authority for the inspection of the most private recesses of a person's anatomy.

+++

[Footnote 1] If the search involves the removal of an object secreted within a body cavity, a warrant specifically authorizing the intrusion must first be obtained (*People v More, 97 NY2d 209, 764 N.E.2d 967, 738 N.Y.S.2d 667 [2002]*).

76.     Additionally, on information and belief, the unlawful strip search and body cavity search were conducted in accordance with unlawful training and supervision of the Syracuse Police Department.  Section 73 of Volume 1, Article 3 of the Syracuse Police Department Patrol Guide, entitled "Strip Searches and Body Cavity Searches" defines strip searches and body cavity searches as follows:

"Strip Search – The removal or rearrangement of some or all of the clothing of a person so as to permit an inspection of the genitals, buttocks, anus, breasts, or undergarments of such person, including but not limited to, inspections conducted visually, manually or by means of any physical instrument.

Body Cavity Search – The inspection of a person's anus, genitalia or the internal physical examination of body cavities, or organs such as the stomach, excluding the mouth, which is conducted visually, manually, or by means of any physical instrument."

To the extent this section of the patrol guide has been interpreted to allow unlawful strip searches and body cavity searches, it is unlawful itself.  To the extent this provision does

not permit such unlawful searches, the defendants have failed to enforce this section of the patrol guide.

77.    That Section also provides that strip searches "may be conducted in the field in accordance with a signed search warrant authorizing the search" (§ 73.12[D]).

78.    On information and belief, the Manual has been used to teach, training and supervise Syracuse Police Department officers in how to conduct unlawful strip searches and body cavity searches, and Syracuse Police Department training was consistent with the Manual.

**Class Action Allegations**

79.    The Plaintiff and Plaintiff class seek a declaration that a strip search/body cavity search of a person present at the execution of a "All Persons Present" warrant undertaken absent a valid warrant permitting such searches or particularized probable cause, reasonable cause or reasonable suspicion that the person is concealing a weapon or unlawful contraband is unconstitutional; and that a body cavity search that involves the removal of an object secreted within a body cavity may only be conducted pursuant to a warrant authorizing such an intrusion; an order enjoining defendants from implementing their policy, practice and custom of routinely conducting strip searches and body cavity searches on persons present at locations where "All Persons Present" warrants are executed, wholly absent particularized probable cause, reasonable cause, reasonable suspicion or a valid warrant permitting such searches; an order requiring defendants to amend their policy manual concerning strip searches and body cavity searches to comply with federal and state law regarding such searches; and compensatory damages, punitive damages, interest, costs, expenses and attorneys' fees.

80.    Plaintiff sues on behalf of himself and all other similarly situated individuals and seeks to represent the class comprised of all persons who have been or will be subjected to defendants'

policy, practice and custom pursuant to which strip search and body cavity searches are routinely conducted on persons present at locations where "All Persons Present" warrants are executed, wholly absent particularized probable cause, reasonable cause, reasonable suspicion or a valid warrant permitting such searches as required by the federal and New York state constitutions.

81.     The class period extends from June 11, 2005, which is three years prior to the filing of the initial complaint in this action which gave defendants notice of the claims against them because of their unlawful policy, practice and custom and extends to the date on which the defendants are enjoined from, or otherwise cease, enforcing their unconstitutional policy, practice and custom on conducting strip search and body cavity searches on persons present at locations where "All Persons Present" warrants are executed, wholly absent particularized probable cause, reasonable cause, reasonable suspicion or a valid warrant permitting such searches.

82.     The members of the class are so numerous as to render joinder impracticable.  Upon information and belief, including the testimony of Det. Armstrong in the <u>Mothersell</u> criminal action, there are and continue to be hundreds, perhaps thousands, of persons who have been or will be subjected to defendants' policy, practice and custom pursuant to which strip search and body cavity searches are routinely conducted on persons present at locations where "All Persons Present" warrants are executed, wholly absent particularized probable cause, reasonable cause, reasonable suspicion or a valid warrant permitting such searches as required by the federal and New York State constitutions.   Such persons are all members of the class whose federal and state constitutional and statutory rights have been or will be violated by the policy, practice and custom of conducting such unlawful strip searches and body cavity searches.

83.      In addition, upon information and belief, joinder is impracticable given the number of absent class members and because many of the class members are low-income persons (possibly incarcerated) who would have great difficulty finding counsel and pursuing their rights individually.

84.      The questions of law and fact common to the class include a) whether the class members have common rights under the Fourth, Fifth and Fourteenth Amendments to the federal constitution, under the state constitution and state law to be free from unconstitutional strip searches and body cavity searches conducted on persons present at locations where "All Persons Present" warrants are executed, wholly absent particularized probable cause, reasonable cause, reasonable suspicion or a valid warrant permitting such searches as required by the federal and New York State constitutions; b) whether defendants violated those rights when they conducted the unlawful strip searches and cavity searches; and c) whether the municipal defendants trained Syracuse Police Department officers in an unlawful and unconstitutional policy, practice and custom of conducting unconstitutional strip searches and body cavity searches on persons present at locations where "All Persons Present" warrants are executed, wholly absent particularized probable cause, reasonable cause, reasonable suspicion or a valid warrant permitting such searches.

85.      The claims of the named Plaintiff are typical of the class with respect to the unlawful strip search and body cavity search in that the Plaintiff and the Plaintiff class were subjected to the violation of their constitutional rights to be free from unlawful searches in violation of their federal and states constitutional and other rights.

86.      The named Plaintiff is an adequate representative of the class.  The violations of law alleged by the named Plaintiff and applicable to him and the putative class members stem from

the same course of conduct by defendants, which is the policy, practice and custom of performing strip searches and body cavity searches on persons present at locations where "All Persons Present" warrants are executed, wholly absent particularized probable cause, reasonable cause, reasonable suspicion or a valid warrant permitting such searches, that violated and continues to violate the rights of the members of the class.  The harm suffered by the named Plaintiff with regard to the unlawful strip search and body cavity search is typical of the harm suffered by the class members.  The legal theory under which the named Plaintiff seeks relief for the unlawful strip search and body cavity search is the same or similar to that on which the class will rely.

87.     The named Plaintiff has the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the class.  The named plaintiff is represented by Ameer Benno, Esq., who has experience in civil rights litigation.  The named Plaintiff and class would be represented by Ameer Benno, Esq. and Beldock Levine & Hoffman LLP, a firm with a litigation practice that specializes in civil rights issues and has litigated many actions against governmental entities involving criminal justice issues, including class actions.  Beldock Levine & Hoffman LLP is presently co-counsel in In re Nassau County Strip Search Cases, 99-2844 (E.D.N.Y.), in which a damages bench trial in a class action jail strip search case was conducted in December 2009; the matter is now sub judice.  Beldock Levine & Hoffman LLP has the resources, expertise and experience to prosecute this action.  It knows of no conflicts among class members and the firm.

88.     A class action is superior to other means for the fair and efficient adjudication of this controversy because i) the prosecution of  hundreds or thousands of separate actions would be inefficient and wasteful of judicial and legal resources; ii) given the likely limited resources of

the class members, they are not likely to be able to vindicate their rights unless this action is maintained as a class action; iii) the issues raised can be more fairly and efficiently resolved in the context of a single class action than piecemeal in many separate actions; iv) the resolution of this litigation in a single forum will avoid the danger and possible confusion of possibly inconsistent adjudications; v) the unified resolution will establish uniform standards of conduct for defendants; vi) the defendants have acted and continue to act on grounds applicable to all class members, making a final declaratory judgment with injunctive relief on behalf of all members necessary and appropriate; and vii) questions of law and fact common to all members of the class predominate over any individual question that affect individual members.

89.     Based on the testimony of Det. Armstong in the <u>Mothersell</u> criminal case, on information and belief, the defendants have a policy, practice and custom of conducting unlawful strip searches and body cavity searches similar to that conducted against the named Plaintiff, as described above.

90.     The defendants knew or should have known that they may not institute, enforce or permit enforcement of a policy, practice or custom of conducting strip searches and body cavity searches on persons present at locations where "All Persons Present" warrants are executed, wholly absent particularized probable cause, reasonable cause, reasonable suspicion or a valid warrant permitting such searches.

91.     Defendants' policy, practice or custom of conducting strip searches and body cavity searches on persons present at locations where "All Persons Present" warrants are executed, wholly absent particularized probable cause, reasonable cause, reasonable suspicion or a valid warrant permitting such searches was promulgated, maintained, effectuated and/or enforced in bad faith and clearly contrary to established law, including but not limited to <u>Shain v. Ellison</u>, 53

F. Supp. 2d 564 (E.D.N.Y. 1999), aff'd, 273 F.3d 56 (2d Cir. 2001), cert. denied, 537 U.S. 1083,

123 S. Ct. 672 (2002), and Ybarra v. Illinois, 444 U.S. 85 (1979).

92.     On information and belief, many "All Persons Present" warrants executed by the

defendants were not and are not based on probable cause against individuals subjected to

unlawful strip searches and body cavity searches; did not name individuals against whom strip

searches and body cavity searches might be conducted; did not authorize strip searches and body

cavity searches; and did not reach the constitutional standard for authorizing strip searches and

body cavity searches.

93.     On information and belief, the strip searches and body cavity searches were not

conducted based on particularized probable cause, reasonable cause, and reasonable suspicion

but based on the blanket policy, practice or custom of conducting strip searches and body cavity

searches on persons present at locations where "All Persons Present" warrants are executed,

wholly absent particularized probable cause, reasonable cause, reasonable suspicion or a valid

warrant permitting such searches.

94.     As Detective Armstrong testified as to searches conducted under all-persons-present

warrants, of which he testified that has conducted hundreds in Syracuse:

> Q.     Is it your policy to always have the people remove their clothes when you're
> conducting a search of their persons?
>
> A.     Every time.
>
> Q.     And do you—is that all you do when you have that done, have them remove their
> clothes, or do you also have them spread their butt cheeks?
>
> A.     Everyone spreads their butt cheeks.
> +++
> Q.     And that is so you can inspect the area around the anal cavity, is that correct?
>
> A.     Inspect the area between their butt cheeks.

Q.      And their anal cavity is exposed at the same time, is that correct?

A.      It's visible.

Q.      It's visible.  You also have, in terms of male individuals that you are searching, do you have them left their scrotum?

A.      Yes.

+ + +

Q.      . . . Is that Syracuse Police Department policy in executing all persons present warrants?

A.      Yes.

Q.      Including what you described is your practice in always having the males spread their butt cheeks and lift their genitals?

A.      Yes.

95.      Upon information and belief, the defendants participated in the enforcement of the unlawful strip search and body cavity search policy, practice and procedure, and/or knowingly or recklessly failed to prevent enforcement of the plainly unconstitutional policy.

96.      Upon information and belief, the municipal and supervisory defendants trained and supervised Syracuse Police Department officers in the unlawful strip search and body cavity search policy, practice and custom without regard for the rights of Plaintiff or the class members.

97.      As a direct result of the unlawful strip search and body cavity search conducted pursuant to defendants' unlawful policy, practice and custom, each member of the class, including the named Plaintiff, has suffered or will suffer significant damages, including pain and suffering.

**CAUSE OF ACTION I**
**VIOLATION OF CONSTITUTIONAL RIGHTS**
**Defendants MacDerment, Armstrong, Jones, Izzo, John and Jane Does**
**(Claim for Compensatory Damages)**

98.     Plaintiff incorporates herein by reference the allegations contained in the paragraphs above.

99.     The unlawful strip search and body cavity search, intentional excessive force and sexual assault of Plaintiff by defendants Det. MacDerment, Det. Armstrong, Det. Jones and Det. Izzo violated the rights of the Plaintiff as guaranteed by the Fourth, Fifth and Fourteenth Amendments of the United States Constitution, for which defendant officers are individually liable.

**CAUSE OF ACTION II**
**VIOLATION OF CONSTITUTIONAL RIGHTS**
**Defendants MacDerment, Armstrong, Jones, Izzo**
**(Claim for Punitive Damages)**

100.     Plaintiff incorporates herein by reference the allegations contained in the paragraphs above.

101.     The unlawful strip search and body cavity search, intentional excessive force and sexual assault of Plaintiff by defendants Det. MacDerment, Det. Armstrong, Det. Jones and Det. Izzo violated the rights of the Plaintiff as guaranteed by the Fourth, Fifth and Fourteenth Amendments of the United States Constitution, for which defendant officers are individually liable.

102.     The unlawful strip search and body cavity search, intentional excessive force and sexual assault of Plaintiff by defendants Det. MacDerment, Det. Armstrong, Det. Jones, and Det. Izzo when Plaintiff was unarmed and did not pose a threat of death or grievous bodily injury to defendants or others, when Plaintiff was not under arrest and defendants had no lawful authority to arrest Plaintiff or to use excessive force against him, was done with actual malice toward

27

Plaintiff and with willful and wanton indifference to and deliberate disregard for the

constitutional rights of Plaintiff.

103.    Plaintiff is entitled to punitive damages.

## CAUSE OF ACTION III
### VIOLATION OF STATUTORY CIVIL RIGHTS
**Defendants MacDerment, Armstrong, Jones, Izzo**
**(Claim for Compensatory Damages)**

104.    Plaintiff incorporates herein by reference the allegations contained in the paragraphs

above.

105.    The unlawful strip search and body cavity search, intentional excessive force and sexual

assault of Plaintiff by defendants Det. MacDerment, Det. Armstrong, Det. Jones, and Det. Izzo

when Plaintiff was unarmed and did not pose a threat of death or grievous bodily injury to

defendants or others, when Plaintiff was not under arrest and defendants had no lawful authority

to arrest Plaintiff or to use excessive force against him, was done with actual malice toward

Plaintiff and with willful and wanton indifference to and deliberate disregard for the statutory

civil rights of Plaintiff.

## CAUSE OF ACTION IV
### VIOLATION OF CONSTITUTIONAL RIGHTS
**Defendant City of Syracuse and Supervisors**
**(Claim for Compensatory Damages)**

106.    Plaintiff incorporates herein by reference the allegations contained in the paragraphs

above.

107.    It was the policy and practice of the defendant City of Syracuse to authorize certain

officers, including defendants Det. MacDerment, Det. Armstrong, Det. Jones and Det. Izzo to

cover up the unlawful strip search and body cavity search, use of excessive force and sexual

assault despite the lack of probable cause to arrest or any actual violation which would justify

circumventing the warrant requirement for such an intrusive body cavity search. This policy and

practice of the City of Syracuse encourages and caused constitutional violations by police

officers of Syracuse, including the violation of Plaintiff's constitutional rights by defendants Det.

MacDerment, Det. Armstrong, Det. Jones, Det. Izzo and other defendant officers described in the

foregoing paragraphs.

108.    It was the policy and practice of the defendant City of Syracuse to authorize certain

officers, including defendants Det. MacDerment, Det. Armstrong, Det. Jones and Det. Izzo, to

deny and prevent prompt medical treatment to Plaintiff who sustained injuries from the excessive

force and sexual assault while in the care and custody of the Syracuse Police Department. These

policies and practices of the City of Syracuse encouraged and caused constitutional violations by

Syracuse police officers, including the violations of Plaintiff's constitutional rights by the

defendants Det. MacDerment, Det. Armstrong, Det. Jones and Det. Izzo described in the

foregoing paragraphs.

109.    At all times pertinent hereto, defendants Capt. Laun, Lt. Glavin, Sgt. Hartnett and Sgt.

Satub, supervised the officers who unlawfully violated Plaintiff's rights encouraged and tolerated

the policies and practices described in the foregoing paragraphs. Defendants Capt. Laun, Lt.

Glavin, Sgt. Hartnett and Sgt. Staub refused adequately to train, direct, supervise, or control

defendant officers so as to prevent the violation of Plaintiff's federal and state constitutional

rights.

110.    At all times pertinent hereto, defendant Gary Miguel supervised the officers who

unlawfully violated Plaintiff's rights encouraged and tolerated the policies and practices

described in the foregoing paragraphs. Defendant Gary Miguel refused adequately to train,

direct, supervise, or control defendant officers so as to prevent the violation of Plaintiff's constitutional rights.

111.    At all times pertinent hereto, defendant Matt Driscoll unlawfully violated Plaintiff's rights encouraged and tolerated the policies and practices described in the foregoing paragraphs. Defendant Matt Driscoll refused to adequately review all policies with the Department of Police and to correct any policy that is contrary to the constitution and statutes of this state and the United States so as to prevent the violation of Plaintiff's constitutional rights.

112.    At all times pertinent hereto, defendants Det. MacDerment, Det. Armstrong, Det. Jones and Det. Izzo were acting within the scope of their employment and pursuant to the aforementioned policies and practices of the City of Syracuse. These policies and practices were enforced by defendants Gary Miguel, Capt. Laun, Lt. Glavin, Sgt. Hartnett and Sgt. Staub, and were the moving force, proximate cause, or affirmative link behind the conduct causing the Plaintiff's injury. Defendants City of Syracuse, Matt Driscoll, Gary Miguel, Capt. Laun, Lt. Glavin, Sgt. Hartnett and Sgt. Staub are therefore liable for the violation of Plaintiff's constitutional rights by defendants Det. MacDerment, Det. Armstrong, Det. Jones and Det. Izzo.

**CAUSE OF ACTION V**
**CONSPIRACY TO VIOLATE CIVIL RIGHTS**
**Defendants MacDerment, Armstrong, Jones, Izzo**
**(Claim for Compensatory Damages)**

113.    Plaintiff incorporates herein by reference the allegations contained in the paragraphs above.

114.    Defendants Det. MacDerment, Det. Armstrong, Det. Jones and Det. Izzo conspired to violate Plaintiff's statutory civil rights as more fully described in the foregoing paragraphs in

violation of 42 U.S.C. Section 1983, for which defendants Det. MacDerment, Det. Armstrong, Det. Jones and Det. Izzo are individually liable.

**CAUSE OF ACTION VI**
**ASSAULT AND BATTERY**
**Defendants MacDerment, Amstrong, Jones, Izzo**
**(Claim for Compensatory Damages)**

115.     Plaintiff incorporates herein by reference the allegations contained in the paragraphs above.

116.     The unlawful strip search and body cavity search, sexual assault and use of excessive force by defendants Det. MacDerment, Det. Armstrong, Det. Jones and Det. Izzo when defendants had no lawful authority to arrest Plaintiff, when Plaintiff was unarmed and did not pose a threat of death or grievous bodily injury to defendants or others, was without justification or provocation, was excessive, and constitutes assault and battery for which defendants Det. MacDerment, Det. Armstrong, Det. Jones and Det. Izzo are individually liable. Plaintiff is thus entitled to compensatory damages.

117.     As a proximate result of the assault and battery committed by defendants Det. MacDerment, Det. Armstrong, Det. Jones and Det. Izzo, Plaintiff has sustained permanent injuries and has incurred legal expenses, lost his liberty of freedom and loss of wages. These injuries have caused and will continue to cause Plaintiff great pain and suffering, both mental and physical.

## CAUSE OF ACTION VII
### ASSAULT AND BATTERY
**Defendants MacDerment, Armstrong, Jones, Izzo**
**(Claim for Punitive Damages)**

118.    Plaintiff incorporates herein by reference the allegations contained in the paragraphs above.

119.    The unlawful strip search and body cavity search, sexual assault and use of excessive force by defendants Det. MacDerment, Det. Armstrong, Det. Jones and Det. Izzo when defendants had no lawful authority to arrest Plaintiff, when Plaintiff was unarmed and did not pose a threat of death or grievous bodily injury to defendants or others, when defendants did not have lawful authority to arrest Plaintiff, to conduct an unlawful strip search and body cavity search,  or to use excessive force against him, was done with actual malice toward Plaintiff and with willful and wanton indifference to and deliberate disregard for human life and the rights of Plaintiff. Plaintiff is thus entitled to punitive damages.

## CAUSE OF ACTION VIII
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**Defendants MacDerment, Armstrong, Jones, Izzo**
**(Claim for Compensatory Damages)**

120.    Plaintiff incorporates herein by reference the allegations contained in the paragraphs above.

121.    Defendants Det. MacDerment, Det. Armstrong, Det. Jones and Det. Izzo intentionally conducted an unlawful strip search and body cavity search, used excessive force and sexually assaulted Plaintiff in a manner that was extreme, outrageous, and unjustified, and caused Plaintiff to suffer physical and emotional distress for which defendants Det. MacDerment, Det.

Armstrong, Det. Jones and Det. Izzo are individually liable. Plaintiff is this entitled to compensatory damages.

## CAUSE OF ACTION IX
### INTENTIONAL INFFLICTION OF EMOTIONAL DISTRESS
### Defendants MacDerment, Armstrong, Jones, Izzo
### (Claim for Punitive Damages)

122.    Plaintiff incorporates herein by reference the allegations contained in the paragraphs above.

123.    The intentional unlawful strip search and body cavity search, use of excessive force and sexual assault inflicted upon Plaintiff severe emotional and mental distress and the actions by defendants Det. MacDerment, Det. Armstrong, Det. Jones and Det. Izzo were unjustified and done with actual malice and wanton indifference to and deliberate disregard for human life and the rights of Plaintiff.  Plaintiff is thus entitled to punitive damages.

## CAUSE OF ACTION X
### NEGLIGENCE
### Defendants MacDerment, Armstrong, Jones, Izzo
### (Claim for Compensatory Damages)

124.    Plaintiff incorporates herein reference to allegations contained in the paragraphs above.

125.    Defendants Det. MacDerment, Det. Armstrong, Det. Jones and Det. Izzo, while acting as agents and employees for the City of Syracuse in their capacity as police officers for Syracuse, owed a duty to Plaintiff to perform their police duties without injuring Plaintiff through sexual assault and with the use of excessive force.  Defendant's use of force upon Plaintiff, when Plaintiff was unarmed and did not pose a threat of death or grievous bodily injury to defendants or others constitutes negligence for which defendants Det. MacDerment, Det. Armstrong, Det. Jones and Det. Izzo are individually liable.

126.    Defendants Det. MacDerment, Det. Armstrong, Det. Jones and Det. Izzo's use of force

upon Plaintiff when defendants had no lawful authority to arrest Plaintiff or to use force against

him constitutes negligence for which defendants are individually liable.

127.    As a proximate result of defendant's negligent use of excessive force and sexual assault,

Plaintiff has sustained permanent injuries and has incurred legal expenses, lost his liberty of

freedom and loss of wages. These injuries have caused and will continue to cause Plaintiff pain

in suffering, both mental and physical. Plaintiff is thus entitled to compensatory damages.

**CAUSE OF ACTION XI**
**NEGLIGENCE**
**Defendants MacDerment, Armstrong, Jones, Izzo**
**(Claim for Punitive Damages)**

128.    Plaintiff incorporates herein by reference the allegations contained in the paragraphs

above.

129.    The negligent sexual assault of Plaintiff by defendants Det. MacDerment, Det.

Armstrong, Det. Jones and Det. Izzo when Plaintiff was unarmed and did not pose a threat of

death or grievous bodily injury to defendants or others, and when defendants has no lawful

authority to arrest Plaintiff or to use excessive force against him, was done with willful and

wanton indifference to and deliberate disregard for human life and the rights to Plaintiff.

Plaintiff is thus entitled to punitive damages.

**CAUSE OF ACTION XII**
**MALICIOUS ABUSE OF PROCESS,**
**FALSE ARREST AND FALSE IMPRISONMENT**
**Defendants MacDerment, Armstrong, Jones, Izzo**
**(Claim for Compensatory Damages)**

130.    Plaintiff incorporates herein by reference the allegations contained in the paragraphs

above.

131.    Defendants Det. MacDerment, Det. Armstrong, Det. Jones and Det. Izzo used criminal process against Plaintiff in order to intimidate him and to dissuade Plaintiff from asserting his rights against defendants and in order to cover up their own wrongdoing and to avoid civil and criminal liability for their own acts.

132.    Defendants Det. MacDerment, Det. Armstrong, Det. Jones and Det. Izzo falsely arrested and falsely imprisoned Plaintiff.

133.    As a proximate result of this malicious abuse of process, false arrest, and false imprisonment, Plaintiff suffered the damages as aforesaid.  Plaintiff is thus entitled to compensatory damages.

**CAUSE OF ACTION XIII**
**DENIAL OF MEDICAL TREATMENT**
**Defendants MacDerment, Armstrong, Jones Izzo**
**(Claim for Compensatory Damages)**

134.    Plaintiff incorporates herein by reference the allegations contained in the paragraphs above.

135.    Plaintiff was entitled to medical treatment upon his arrest and confinement and defendants Det. MacDerment, Det. Armstrong, Det. Jones and Det. Izzo deliberately and intentionally failed promptly to provide Plaintiff with such medical treatment.

136.    As a proximate result of this denial of medical treatment, Plaintiff suffered damages as aforesaid.

137.    As a direct and proximate result of the acts and omissions of the defendants as described in this complaint, Plaintiff suffered and continues to suffer severe emotional distress, humiliation and embarrassment.

138.    As a direct and proximate result of the acts and omissions of the defendants as described

in this complaint Plaintiff has incurred court costs and has suffered a wage loss.

139.    The acts of the defendants Det. Armstrong and Det. Izzo as described in this complaint

were done in bad faith, and maliciously with intent to deter Plaintiff from exercising his

constitutional right to a fair trial and such acts warrant the imposition of punitive and

compensatory damages.


**CAUSE OF ACTION XIV**
**DEPRIVATION OF FEDERAL CONSTITUTIONAL RIGHTS**
**On Behalf of Plaintiff and the Plaintiff Class**
**Against the Municipal Defendants**


140.    Plaintiff and the Plaintiff Class incorporate herein by reference the allegations contained

in the paragraphs above.

141.    By implementing, promulgating, and continuing to enforce and/or effectuate a policy,

practice and custom pursuant to which the named Plaintiff and other members of the Plaintiff

class were or will be subjected to unlawful strip searches and body cavity searches pursuant to

defendants' unlawful policy, practice and custom with regard to the execution of "All Persons

Present" warrants and conducting unlawful strip searches and body cavity searches in connection

with the execution of such warrants the defendants have deprived and will continue to deprive

each and every plaintiff and members of the plaintiff class of rights, remedies, privileges and

immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. Section

1983, and of rights guaranteed by the Fourth, Fifth and Fourteenth Amendments of the United

States Constitution, conspired among themselves to do so (taking numerous overt steps in

furtherance thereof), and failed to prevent one another from doing so.

36

142.   Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment. Said acts by said defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiffs of their constitutional rights secured by 42 U.S.C. Section 1983, and by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

143.   As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff and each and every member of the Plaintiff class suffered and continue to suffer psychological pain, suffering and mental anguish and other injuries.

**CAUSE OF ACTION XV**
**DEPRIVATION OF STATE CONSTITUTIONAL RIGHTS**
**On Behalf of Plaintiff and the Plaintiff Class**
**Against the Municipal Defendants**

144.   Plaintiff and the Plaintiff Class incorporate herein by reference the allegations contained in the paragraphs above.

145.   By implementing, promulgating, and continuing to enforce and/or effectuate a policy, practice and custom pursuant to which the named Plaintiff and other members of the Plaintiff class were or will be subjected to unlawful strip searches and body cavity searches pursuant to defendants' unlawful policy, practice and custom with regard to the execution of "All Persons Present" warrants and conducting unlawful strip searches and body cavity searches in connection with the execution of such warrants, the defendants have deprived and will continue to deprive Plaintiff and each and every members of the Plaintiff class of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of Article I, Section 12

of the New York State Constitution, conspired among themselves to do so (taking numerous

overt steps in furtherance thereof), and failed to prevent one another from doing so.

146.   Defendants acted under pretense and color of state law and in their individual and official

capacities and within the scope of their employment. Said acts by said defendants were beyond

the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said

defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiffs of their

constitutional rights secured by Article I, Section 12 of the New York State Constitution.

147.   As a direct and proximate result of the misconduct and abuse of authority detailed above,

Plaintiff and each and every members of the Plaintiff class suffered and continue to suffer

psychological pain, suffering and mental anguish and other injuries.

148.   This cause of action gives rise to respondeat superior liability against the municipal

defendants.

**CAUSE OF ACTION XVI**
**DEPRIVATION OF STATE RIGHTS**
**On Behalf of Plaintiff and the Plaintiff Class**
**Against the Defendants**

149.   Plaintiff and the Plaintiff class incorporate herein by reference the allegations contained

in the paragraphs above.

150.   By implementing, promulgating, and continuing to enforce and/or effectuate a policy,

practice and custom pursuant to which the named Plaintiff and other members of the Plaintiff

class were or will be subjected to unlawful strip searches and body cavity searches pursuant to

defendants' unlawful policy, practice and custom with regard to the execution of "All Persons

Present" warrants and conducting unlawful strip searches and body cavity searches in connection

with the execution of such warrants, the defendants have deprived and will continue to deprive

Plaintiff and each and every members of the Plaintiff class of their right under New York State law.  Such actions constitute wrongful conduct under the laws of the State of New York:

      a.   Assault and battery on the Plaintiff and the Plaintiff class members;

      b.   Trespass on the person of the Plaintiff and the Plaintiff class members;

      c.   Negligence in causing the injuries to the Plaintiff and the Plaintiff class members;

      d.   Intentional infliction of emotional distress upon the Plaintiff and the Plaintiff class members;

      e.   Negligent training of defendant police officers by the municipal defendants;

      f.   Conspiracy by the defendants to commit the above-described acts.

151.   Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment.

152.   As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff and each and every members of the Plaintiff class suffered and continue to suffer psychological pain, suffering and mental anguish and other injuries.

153.   This cause of action gives rise to respondeat superior liability for the municipal defendants.

## IRREPARABLE HARM

154.   If defendants' policy, practice and custom of conducting strip searches absent the requisite reasonable suspicion is not enjoined, the named Plaintiff and the members of the Plaintiff class will be subjected to immediate and irreparable injury for which no adequate remedy at law exists in that members of the Plaintiff class will suffer continued violations of their rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, Article 1, Section 12 of the New York State Constitution, and state law.

**WHEREFORE**, Plaintiff and the Plaintiff Class request that the Court do the following:

a.  Enter an order certifying this action as a class action pursuant to Fed.R. Civ. P. 23(a) and (b) for the Plaintiff class described herein, and naming Plaintiff as the class representative;

b.  Enter a declaratory judgment that conducting a strip search/body cavity search of a person present at the execution of a "All Persons Present" warrant undertaken absent a valid warrant permitting such searches or particularized probable cause, reasonable cause or reasonable suspicion that the person is concealing a weapon or unlawful contraband is unconstitutional;

c.  Enter a declaratory judgment that a body cavity search that involves the removal of an object secreted within a body cavity may only be conducted pursuant to a warrant authorizing such an intrusion;

d.  Enter an order enjoining defendants from implementing their policy, practice and custom of routinely conducting strip searches and body cavity searches on persons present at locations where "All Persons Present" warrants are executed, wholly absent particularized probable cause, reasonable cause, reasonable suspicion or a valid warrant permitting such searches;

e.  Enter an order requiring defendants to amend their policy manual concerning strip searches and body cavity searches to comply with federal and state law regarding such searches;

f.  Award compensatory damages in favor of Plaintiff in an amount to be determined at trial;

g.  Award punitive damages in favor of Plaintiff in an amount to be determined at trial;

h.   Award compensatory damages in favor of the Plaintiff class in an amount to be

determined at trial;

i.   Award punitive damages in favor of the Plaintiff class in an amount to be determined at

trial;

j.   Award to the Plaintiff and Plaintiff class interest;

k.   Award to the Plaintiff and Plaintiff class costs of action, including expenses, and

reasonable attorneys' fees; and

l.   Grant such other and further relief as the court may deem appropriate, just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff and the Plaintiff

class demand a trial by jury.


Dated: New York, New York
        April 8, 2011


_____/S/_____
Ameer Benno, Esq.
BENNO & ASSOCIATES P.C.
233 Broadway, Suite 900
New York, NY 10279
(212) 227-9300 (office)
(212) 994-8082 (fax)
www.ameerbenno.com


Of counsel:
Beldock Levine & Hoffman LLP
99 Park Avenue, Suite 1600
New York, New York 10016
(212) 490-0400
By:     Jonathan C. Moore
        Myron Beldock
        (admitted in N.D.N.Y.)
        Vera M. Scanlon
        (application to N.D.N.Y. submitted)