UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇

**Robert Mothersell, individually and on behalf of all
others similarly situated,**

**Plaintiff,**

**-V-**                                                          5:08-CV-615
                                                                 (NAM/TWD)

**City of Syracuse; Stephanie A. Miner (Mayor), Frank L.
Fowler (Chief of Police), Matthew J. Driscoll, (former
Mayor), Gary Miguel (former Chief of Police), in their
individual capacities; and Capt. Timothy Laun, Lt.
Michael Glavin, Sgt. Michael Hartnett, Sgt. James Staub,
Det. Susan Izzo, Det. Matthew MacDerment, Det. David
Armstrong, Det. David Jones, John and Jane Does
Syracuse Police Officers, individually and in their official
capacities,**

**Defendants.**

◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇

APPEARANCES:
Benno & Associates PC
Ameer N. Benno, Esq., of counsel
110 Wall Street, 11th Floor
New York, New York 10005
and
The Law Office of Reza Rezvani
Reza Rezvani, Esq., of counsel
60 Madison Avenue, Suite 1005
New York, New York 10010
and
Beldock, Levine & Hoffman LLP
Myron Beldock, Esq., of counsel
99 Park Avenue, Suite 1600
New York, New York 10016
Attorneys for Plaintiff

Hancock Estabrook LLP
John G. Powers, Esq., of counsel
1500 AXA Tower I
100 Madison Street
Syracuse, New York 13221
and
City of Syracuse Corporation Counsel

Mary Anne Doherty, Esq., of counsel
233 East Washington Street
City Hall, Room 301
Syracuse, New York 13202
Attorneys for Defendants

**Hon. Norman A. Mordue, Chief U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

In this amended civil rights complaint (Dkt. No. 64), plaintiff Robert Mothersell ("plaintiff" or "Mothersell") alleges Fourth Amendment and other violations arising from a strip search during the execution of a premises search warrant containing an "all-persons-present" clause. New York's Court of Appeals reversed Mothersell's conviction for possession of drugs seized from his person during the search, holding that the search warrant application did not support the all-persons-present clause in the warrant. *People v. Mothersell*, 14 N.Y.3d 358 (2010). Plaintiff now moves (Dkt. No. 80) for certification of a class of all persons who, during the class period, were strip searched during the execution of an all-persons-present warrant "pursuant to the blanket strip search policy, custom, and or practice of the Syracuse Police Department and the City of Syracuse without regard for the existence of probable cause or reasonable suspicion as to the searches." As set forth below, the Court denies the motion.

**PROCEEDINGS IN NEW YORK STATE COURT**

This action stems from the seizure of a plastic bag of crack cocaine by officers of the Syracuse Police Department ("SPD") in the course of a search of Mothersell's person during the execution of a warrant to search the first floor front apartment at 114 Isabella Street, Syracuse, New York, on February 23, 2006. Mothersell was not named in the search warrant, which

contained a clause authorizing the search of all persons present at the time of its execution. After

denial of his suppression motion, Mothersell pleaded guilty to criminal possession of a controlled

substance, fifth degree. The Fourth Department affirmed the conviction. *People v. Mothersell*,

873 N.Y.S.2d 406 (4th Dep't 2009). On April 1, 2010, the New York Court of Appeals reversed

the Fourth Department's order, granted the suppression motion, and dismissed the indictment,

holding that the search offended the Fourth Amendment and the New York State Constitution.

*People v. Mothersell*, 14 N.Y.3d 358 (2010).

 In ruling that the denial of Mothersell's suppression motion was error, New York's high

court concluded that the search warrant application did not provide probable cause to support the

issuance of an all-persons-present warrant.[1] The high court did not consider whether the strip

search of Mothersell was justified on any other ground, because it relied on Det. David

Armstrong' suppression hearing testimony, which the court characterized as stating that "he

searched defendant solely pursuant to what he understood to be the warrant's authority; he

acknowledged that he had no independent basis for an arrest and, in fact, said that defendant was

not under arrest at the time of the search." 14 N.Y.3d at 361. Nor did the court analyze whether

any other officer involved made the decision to strip search Mothersell based on the facts known

to him or her at the time of the search.

 Although not necessary to its decision, the New York Court of Appeals further addressed

Mothersell's claim that, even if properly issued, the all-persons-present warrant did not authorize

---

[1] The *People v. Mothersell* court stated that "there could be circumstances in which a showing of probable cause to search a place would also afford probable cause to infer that everyone present at the place had upon their persons the items specified in the warrant, and thus ... [N.Y.C.P.L. 690.15, which authorizes the issuance of all-persons-present warrants] was capable of application without constitutional offense." 14 N.Y.3d at 362-63.

the level of intrusiveness of the search to which he was subjected, that is, a strip search "during

which he was required to lift his scrotum and then to bend over to expose his anal cavity." *Id*. at

361. The high court referred to these added intrusions as a "visual cavity search." It stated that at

the time the warrant was sought, there were no "specific facts to support a reasonable suspicion"

that Mothersell had secreted contraband beneath his clothes or in a body cavity, so that "these

extraordinary intrusions could not have been within any authority the warrant was capable of

conferring." *Id.* at 367.[2] The court did not consider whether facts known to the officers at the

time of the search provided justification for such a search.

## AMENDED COMPLAINT

The amended complaint (Dkt. No. 64) alleges that on February 23, 2006, City of Syracuse

City Court Judge Stephen J. Dougherty issued a search warrant for the apartment at 114 Isabella

Street. The warrant application alleged, *inter alia*, that Thomas Rushlow, the tenant of the

apartment, had twice sold narcotics to an informant at the apartment. The warrant authorized the

search of the premises, as well as the following:

> any and all person(s) present, congregating and/or acting as monitors who
> may be involved in this narcotic enterprise as co-conspirator(s) while acting
> in concert with the targeted suspect(s) and/or customer(s). Persons patronizing
> the enterprise for the purpose of purchasing and possessing the narcotic
> controlled substance commonly known as cocaine, at the time of the execution

---

[2] The *People v. Mothersell* court, 14 N.Y.3d at 366, reaffirmed its formulation in *People v. Hall*: [A] strip search must be founded on a reasonable suspicion that the arrestee is concealing evidence underneath clothing and the search must be conducted in a reasonable manner. To advance to the next level required for a visual cavity inspection, the police must have a specific, articulable factual basis supporting a reasonable suspicion to believe the arrestee secreted evidence inside a body cavity and the visual inspection must be conducted reasonably. If an object is visually detected or other information provides probable cause that an object is hidden inside the arrestee's body, *Schmerber* [*v. California*, 384 U.S. 757 (1966)] dictates that a warrant be obtained before conducting a body cavity search unless an emergency situation exists.
10 N.Y.3d 303, 310-11 (2008).

of any warrant issued pursuant to this application, are considered to be targets of this investigation at the time of said execution.

Plaintiff was present in the apartment at the time the warrant was executed. He was not a resident of the apartment, nor was he named in any investigation reports, the warrant application, or the warrant.

According to the amended complaint, during the execution of the search warrant, the following occurred:

> [Dets. David Armstrong and David Jones] ordered Plaintiff into the bedroom, and while leaving the door open for everyone in the vicinity to view, ordered him to remove his clothing, ordered him to lift his scrotum, and ordered him to bend over and "spread his cheeks" ... violating the sanctity of his person and his protected rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution and the state constitution.

Plaintiff further claims that while he was bent over, Det. Armstrong committed aggravated sexual assault on him by inserting a plastic coat hanger "in Plaintiff's anus and scraping it down and around Plaintiff's rectum area causing pain, irritation, [and] mental anguish." Plaintiff adds that he was denied medical treatment. Plaintiff alleges:

> The defendants' actions against Plaintiff were taken pursuant to defendants' unlawful policy, practice and custom pursuant to which strip search and body cavity searches are routinely conducted on persons present at locations where "All Persons Present" warrants are executed, wholly absent particularized probable cause, reasonable cause, reasonable suspicion or a valid warrant permitting such searches as required by the federal and New York State constitutions.

The class allegations state that plaintiff sues on behalf of himself and all other similarly situated individuals and that plaintiff seeks to represent the following class:

> [A] class comprised of all persons who have been or will be subjected to defendants' policy, practice and custom pursuant to which strip search and body cavity searches are routinely conducted on persons present at locations where "All Persons Present" warrants are executed, wholly absent

particularized probable cause, reasonable cause, reasonable suspicion or a valid warrant permitting such searches as required by the federal and New York state constitutions.

According to plaintiff, the SPD policy and practice "has inflicted injury on hundreds and possibly thousands of persons" and subjected them to "humiliatingly invasive, unconstitutional and prohibited" searches.

The amended complaint asserts claims against the individual officers involved in the execution of the warrant at 114 Isabella Street as well as municipal and departmental officials. It includes Fourth Amendment and common-law claims stemming from the search and alleged sexual assault of plaintiff. It further claims that plaintiff and the putative class members "were or will be subjected to unlawful strip searches and body cavity searches" pursuant to the alleged unlawful policy and practice, thus depriving them of their Fourth Amendment and other rights. The amended complaint seeks declaratory and injunctive relief, an order requiring defendants to amend their policy manual to comply with federal and state law regarding such searches, and compensatory and punitive damages in favor of plaintiff and the class members.

Presently before the Court is plaintiff's motion (Dkt. No. 80) to certify the following class on behalf of Mothersell and the putative class members:

> All persons who, since June 11, 2005, (1) were present at a location where an "all persons present" search warrant was executed by the Syracuse Police Department at such location; and (2) during the execution of that warrant, were strip searched or were strip searched and subjected to a visual body cavity search at that location by members of the Syracuse Police Department pursuant to the blanket strip search policy, custom, and or practice of the Syracuse Police Department and the City of Syracuse without regard for the existence of probable cause or reasonable suspicion as to the searches.

## PROCEEDINGS IN DISTRICT COURT

On June 11, 2008, plaintiff filed a *pro se* complaint (Dkt. No. 1) without class allegations.

-6-

On June 14, 2010, after the New York Court of Appeals decided *People v. Mothersell*, plaintiff, then represented by counsel, moved (Dkt. No. 45) for leave to amend the pleadings to add strip search and visual cavity search class allegations. After United States Magistrate Judge George H. Lowe granted the motion to amend in most respects (Dkt. No. 58), the parties engaged in lengthy class discovery. Having reviewed the extensive record, this Court sees no need for further class discovery or an evidentiary hearing, nor does any party request such relief.

## CLASS ACTIONS - GENERALLY

Rule 23(a) and (b) of the Federal Rules of Civil Procedure provide:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>> (1) the class is so numerous that joinder of all members is impracticable;
>> (2) there are questions of law or fact common to the class;
>> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>> (4) the representative parties will fairly and adequately protect the interests of the class.
> (b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:
>> ***
>> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. ***

In its 2006 decision clarifying the district court's role in assessing a motion for class certification, the Second Circuit advises that "[t]he district judge must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." *In re Initial Public Offerings Secs.*, 471 F.3d 24, 41 (2d Cir. 2006). The "preponderance of

the evidence" standard of proof applies to evidence proffered to meet the requirements of Rule 23. *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008). The Supreme Court explains:

> Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc. We recognize[] ... that sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question, and that certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.

*Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S.Ct. 2541, 2551 (2011) (citations and internal quotation marks omitted).

## DISCUSSION

After conducting the required rigorous analysis, including a thorough reading of more than 1,500 pages of deposition transcripts, this Court determines that plaintiff has failed to demonstrate by a preponderance of the evidence that the prerequisites of Rule 23 have been satisfied. The weight of the record evidence is that defendants did not routinely strip search everyone present when executing a search warrant with an all-persons-present clause.[3] As will be discussed below, five of the six officers deposed by plaintiff testified that, when executing an all-persons-present warrant, they decided whom to strip search based on the particular facts known to them at the time of the search. Their testimony regarding the numerous factors they considered in making that decision, both in general terms and specifically concerning Mothersell, supports the conclusion that the claim of each prospective class member depends not on generalized proof of

---

[3] Hereinafter, except where necessary to draw a distinction between the two, the Court uses the term strip search to include both a strip search alone and a combined strip search and visual cavity search.

-8-

whether there was an unconstitutional blanket strip search policy, but rather on highly individualized proof regarding the circumstances of each strip search. Their testimony further suggests that in many individual cases, the particular factors they considered may have provided constitutional justification for the search. Consideration of the deposition testimony and the other record evidence persuades the Court that plaintiff has not demonstrated the existence of common issues that are central to the validity of each claim and that can be resolved through generalized, rather than individualized, proof. Therefore, plaintiff has not met his burden of establishing that there are "questions of law or fact common to the class" ("commonality") under Rule 23(a)(2), nor has he established "that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" ("predominance") under Rule 23(b)(3).

The Court emphasizes that it does not decide the merits of whether there was a blanket strip search policy or practice regarding all-persons-present warrants, nor does the Court decide whether the strip search of plaintiff was justified by the facts known to the officers at the time. As explained below, the Court considers the evidence only to the extent that it bears on the showing needed to meet the requirements of Rule 23. *See Amgen, Inc. v. Connecticut Ret. Plans and Trust Funds*, __ U.S. __, __ , 2013 WL 691001, *7 (Feb. 27, 2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").

**Commonality - Rule 23(a)(2)**

Among the requirements for class certification is a determination that "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). The Supreme Court has noted that the language of Rule 23(a)(2) is "easy to misread, since any competently crafted class complaint literally raises common questions." *Wal-Mart*, 131 S.Ct. at 2551 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L.Rev. 97, 131-32 (2009) (internal quotation marks and brackets omitted)). The *Wal-Mart* decision explains:

> Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they have all suffered a violation of the same provision of law. ... Their claims must depend upon a common contention – for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Id.* (citation and internal quotation marks omitted). The decision continues:

> "What matters to class certification ... is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."

*Id.* (quoting Nagareda, supra, at 132).

On this motion, in support of a finding of commonality, plaintiff argues:

> The focus of Plaintiff's claims is the unlawful strip search policy described in the class definition. The evidence is compelling that persons who were present at a target location when an "all persons present" search warrant was executed were strip searched and subjected to a visual body cavity search without regard to the existence of probable cause or reasonable suspicion. As such, this class action has at least four common issues of importance to all class members: (1) did the SPD (and, by extension, the City of Syracuse) employ a blanket strip search/body cavity search policy, custom and/or practice during the class period; (2) was the policy, custom and/or practice unconstitutional; (3) are the City of Syracuse and other defendants responsible for these constitutional violations; and (4) what common damages did the

-10-

class members suffer because of these unlawful acts?

(Emphasis added.)

These "common questions" cited by plaintiff do not meet the requirement in *Wal-Mart* that the class members' claims must depend on a "common contention ... of such a nature that it is capable of classwide resolution." 131 S.Ct. at 2551. The consistent testimony of five of the six officers deposed was that in executing all-persons-present warrants, they did not routinely strip search everyone present, but rather decided whether to strip search a particular person based on the facts known to them leading up to the warrant execution in combination with the facts developed at the scene during the execution of the warrant. Such facts likely provided a constitutional basis to search in many individual cases. The testimony of the sixth officer, Det. Armstrong, who also testified at Mothersell's suppression hearing, was less clear, but as discussed below, it does not lend substantial support to plaintiff's position. The evidence fails to show that people who otherwise meet the class definition – that is, people who were strip searched during the execution of an all-persons-present warrant during the class period – were strip searched based on the existence of the all-persons-present clause, rather than on the facts known to the officers at the time of each search. Therefore, litigating the questions of whether a blanket policy or practice regarding all-persons-present warrant clauses existed and, if so, whether it was constitutional, will not resolve an issue that is "central to the validity of the claims" of the prospective class members.[4]

---

[4] If, however, the class definition is limited to those people strip searched <u>without</u> probable cause or reasonable suspicion during the execution of an all-persons-present warrant – a limitation which plaintiff disavows in his Reply Memorandum of Law – preliminary mini-trials would be required to determine whether each prospective class member belonged in the class, *i.e.*, whether he or she was searched with probable cause or reasonable suspicion, or without it.

Plaintiff relies heavily on *In re Nassau County Strip Search Cases* ("*Nassau*"), 461 F.3d 219 (2d Cir. 2006), and similar cases following *Shain v. Ellison*, 273 F.3d 56 (2d Cir. 2001) ("[P]ersons charged with a misdemeanor and remanded to a local correctional facility ... have a right to be free of a strip search absent reasonable suspicion that they are carrying contraband or weapons[.]").[5]  *Nassau* held that it was error to deny certification of a class comprising "all persons arrested for or charged with non-felony offenses who have been admitted to the Nassau County Correctional Center and strip searched without particularized reasonable suspicion."  In *Nassau* and the similar cases relied on by plaintiff, the classes comprised all those searched pursuant to blanket policies of automatically strip searching every detainee upon admission to a detention facility, regardless of the existence of particularized suspicion.[6]  Since all prospective class members were newly admitted detainees, proof of the existence of a blanket policy of searching all newly admitted detainees would explain why each class member was searched, and thus would "resolve an issue that is central to the validity of each one of the claims in one stroke."[7]  *Wal-Mart*, 131 S.Ct. at 2551.  In contrast, in the instant case, there is no uniformity in the circumstances under which the searches were undertaken.  Due to the widely varying

---

[5] For purposes of this discussion, it is not necessary to consider the impact of the Supreme Court's decision in *Florence v. Board of Chosen Freeholders of Co. of Burlington*, __ U.S. __, 132 S.Ct. 1510 (2012), on this line of cases.

[6] *See, e.g., Mitchell v. County of Clinton*, 2007 WL 1988716 (N.D.N.Y. Jul. 5, 2007); *McBean v. City of N.Y.*, 228 F.R.D. 487 (S.D.N.Y. 2005); *Spinner v. City of N.Y.*, 2003 WL 23648356 (E.D.N.Y. Oct. 10, 2003); *and Dodge v. County of Orange*; 208 F.R.D. 79 (S.D.N.Y. 2002).

[7] Similarly, in *Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010), the Second Circuit found commonality, typicality, and predominance in a proposed class of all New York City plaintiffs "who have been or will be arrested, summonsed, or prosecuted under N.Y. Penal Law § 240.35(1)," which had previously been declared unconstitutional.  The arrests, summonses, and prosecutions in issue shared the common feature of being based on section 240.35(1), and a determination that New York City had a policy of enforcing section 240.35(1), or failed to train officers and prosecutors that the statute was unconstitutional, would resolve an issue central to the validity of each one of the claims in one stroke.

-12-

circumstances inherent in drug searches in the field, there is no common class contention absent some evidence that the searches all shared a common feature. As discussed below, plaintiff has failed to show that the existence of an all-persons-present clause in the search warrant is a common feature in the claims of the prospective class members, because he has not made a showing that strip searches were routinely conducted based on that clause rather than on the facts known to the officers at the time of each search. Nor has he shown that there is otherwise a common issue central to the validity of each claim. To paraphrase *Wal-Mart*, it cannot be said that examination of all the class members' claims for relief will produce a common answer to the crucial question, "Why was I searched?" 131 S.Ct. at 2552.[8]

The Court rejects plaintiff's argument that the New York Court of Appeals' decision in *People v. Mothersell*, 14 N.Y.3d 358, supports a determination that he and other prospective class members were searched pursuant to a blanket SPD strip search policy and practice. The issue decided by the Court of Appeals was whether the search warrant application provided probable cause to support the issuance of the all-persons-present warrant. The question of whether the SPD had a blanket strip search policy regarding all-persons-present warrants was not directly before the Court of Appeals, and its reference to "hearing testimony indicating that strip searches are commonly performed solely on the authority of all-persons-present warrants" was not essential to its decision. 14 N.Y.3d at 366. Moreover, the reference was based solely on Det. David Armstrong's testimony at the suppression hearing. The Court of Appeals' interpretation of Det. Armstrong's testimony is not binding in the present action, and in addressing the

---

[8] The *Wal-Mart* court wrote: "Without some glue holding the alleged reasons for all those [employment] decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question why was I disfavored." 131 S.Ct. at 2552 (emphasis in original).

-13-

certification motion, this Court considers Det. Armstrong's testimony both at the suppression

hearing and at his deposition, as well as the deposition testimony of the other officers involved in

the February 23, 2006 incident and all other evidence submitted.[9]

In holding that plaintiff has not demonstrated that the searches of the prospective class

members were based on the existence of an all-persons-present clause in the search warrant,

rather than on the facts known to the officers at the time of each search, the Court relies in large

part on the voluminous deposition transcripts. Dets. David Armstrong and David Jones

conducted the strip search of plaintiff. Under detailed and repetitive questioning, Det. Jones

consistently testified that he did not conduct strip searches pursuant to a blanket policy regarding

all-persons-present warrants. Rather, he stated that the warrant "gave us the permission to get

inside the residence, check their clothing, check their pockets and everything else, but based upon

that information and the investigation once we were there is what gave us that further step to strip

search." When asked whether he believed that the all-persons-present warrant authorized a strip

search, he stated: "No. You have to build that probable cause once you get there." He further

testified that it was not SPD policy to conduct a visual cavity search in every case where field

strip searches were performed, and when asked whether "everybody spreads their buttocks," he

responded: "It's individual. It's not across the board. It would have to be each given

circumstance."

---

[9] The Court of Appeals further characterized Det. Armstrong's suppression testimony as follows: "[He] testified that he searched defendant solely pursuant to what he understood to be the warrant's authority; he acknowledged that he had no independent basis for an arrest and, in fact, said that defendant was not under arrest at the time of the search." 14 N.Y.3d at 361. Again, this interpretation is not binding here. The New York court did not analyze whether any other officer involved made the decision to strip search Mothersell based on facts known to him or her at the time of the search, or whether such facts provided justification for an arrest, a strip search, or a combination strip and visual cavity search. This Court does not now address those questions, which go to the merits of plaintiff's claims.

Det. David Armstrong, who searched plaintiff with Det. Jones, was the only SPD officer to testify at plaintiff's suppression hearing. Plaintiff relies on Det. Armstrong's suppression testimony and the New York Court of Appeals' references to it in *People v. Mothersell*, 14 N.Y.3d 358, in support of his assertion that the SPD searched him and the prospective class members based solely on the alleged blanket policy and practice concerning all-persons-present warrants. On a close reading, however, the suppression transcript is far from clear regarding SPD policy and practice regarding such searches, and the grounds for plaintiff's search in particular. This may be explained partly by the fact that Judge Aloi had already determined that the strip search of Mothersell was justified; the only issue at the hearing was whether the search exceeded the permissible degree of intrusiveness under New York law. In any event, Det. Armstrong's suppression testimony is too unclear to provide significant support for plaintiff's assertion that the SPD had a policy or practice of routinely subjecting all people present at the execution of an all-persons-present warrant to a strip and visual cavity search.[10] In his deposition, in response to lengthy questioning about SPD policy and practice regarding all-persons-present warrants, Det. Armstrong testified that it was his understanding that, when entering a "drug house" pursuant to a warrant with an all-persons-present clause, the officers could exercise their discretion to do a strip search, including a visual cavity search, on everyone in the house. In exercising their discretion, they would strip search only those they believed were involved in the drug activity, and would not search those who were "clearly not involved." He characterized it as a "judgment call" and added: "We would take the circumstances into account and decide who would be strip searched."

_____

[10] In his deposition, Det. Armstrong explained why he testified as he did at the suppression hearing. It is not necessary for the Court to evaluate his explanations to reach the conclusion that the suppression testimony does not strongly support plaintiff's position.

Det. Susan Izzo was the lead detective in the drug raid on 114 Isabella Street. When asked what kind of search an all-persons-present warrant authorized, she stated that it permitted them to enter the premises "and then determine further probable cause that could lead to a certain search." They would search a person "[o]nly after we determined that this person was involved, yes. I mean, it's the totality of the situation, it's not just this warrant. It's what we find when we get in there." As for the type of search permitted, she stated: "Certainly a search of their person, meaning their pockets and whatever, and it could be up to and including a strip search, but that's with circumstances that would point to that needing to be done.... Would be the totality of the situation and the information you gather, it could lead to a strip search[.]" She added that a strip search would be permissible when the circumstances led them to believe the person was secreting contraband.

Sgt. Michael Hartnett testified that he participated in the execution of the search warrant at 114 Isabella Street. He stated that the presence of an all-persons-present clause did not make a strip search "automatic"; rather, the all-persons-present clause "combined with the totality of what we located and observed and the events that occurred during it are what led us to conduct the strip searches." He added: "There's no absolute. It's all going to be relevant to the situation I'm in[.]" He further stated that his understanding of what was authorized by an all-persons-present warrant was consistent with SPD practice.

Sgt. David Proud stated that he was part of the entry team at 114 Isabella Street, but did not participate in the search. He was one of Det. Armstrong's supervisors during the time in question. In his position as a sergeant, he instructed other officers about applying for and executing search warrants. He testified that the all-persons-present clause allowed a strip search

of persons present who are "deemed to be involved." Asked how he would decide whether someone was "involved," he testified that the factors "could include, but ... wouldn't be limited to, the case itself, building up to the search warrant, be it controlled buys, undercover purchases, pre-warrant surveillances, and pre-warrant activity at the location. ... Upon the execution of the actual warrant itself you would have what occurred ... inside or outside the residence, ... the actions of people that are inside the location." And when asked if there were categories of people who were "regularly exempted" from searches during execution of an all-persons-present warrant, he stated: "I definitely wouldn't say that there were categories. Everything was based on the circumstances."

Lt. Michael Glavin, who supervised SPD drug investigations at the time in question, testified that he was involved in the search of 114 Isabella Street, but does not remember it. He stated that when police executed an all-persons-present warrant, "everybody that was present during that search warrant [was] subject to what was necessary for us to do[.]" That meant, in general, a frisk search and "in some instances a strip search of their person." He stated that a strip search did not always include a visual cavity search. Asked how he decided when it was necessary to conduct a strip search, he stated: "The circumstances would dictate it, circumstances and background of the people involved, what was going on at the time, the information we had at the time, stuff like that."

In view of the testimony that the decision to conduct a strip search when executing an all-persons-present warrant depended on the particular circumstances of each case, the Court briefly addresses the evidence of the particular facts surrounding Mothersell's strip search. Dets. Jones, Armstrong, and Izzo, and Lt. Hartnett, all of whom had extensive experience in drug

investigations, searches, and arrests, testified in largely consistent detail to the facts leading up to the strip search of Mothersell.[11]  The apartment at 114 Isabella Street was known as a "crack house."  Within two weeks prior to the execution of the warrant, two purchases of crack at the apartment had been made by a confidential informant.  Within 20 minutes prior to the execution, an informant had gone to the apartment, purchased crack cocaine from a "white male," and, in Det. Izzo's words, reported that "the whole place was full of people smoking crack."  While the Emergency Response Team entered and secured the premises, the execution team, including Det. Armstrong and Sgt. Hartnett, secured the perimeter outside the building.  While outside, Det. Armstrong and Sgt. Hartnett saw a man appear in a window, which they learned was the window in the only bedroom, and kick out the glass, apparently intending to escape.  When the man saw the police outside, he ran back inside.  Det. Armstrong saw him clearly – he said their "eyes met" – and recognized him as Mothersell.  After they entered the apartment, Det. MacDerment told Det. Armstrong that he had found Mothersell in bed in the bedroom, pretending to be asleep.  No one else was in the bedroom.  Det. Izzo searched the bedroom and found scales and crack pipes with what appeared to be (and was later confirmed to be) crack residue.  Det. Jones stated: "In my mind, [Mothersell] was under arrest from the minute they found drugs in the bedroom upon entry."  As the search of the apartment progressed, the officers found two packages of crack cocaine in the living room.  Prior to his strip search, Mothersell, who was one of two white men in the apartment and was known to the officers from his prior record, was lying on the floor in the kitchen with his hands secured behind his back.  Det. Jones saw him "fidgeting" with the back of

---

[11] This brief summary of the deposition testimony of the officers does not constitute factual findings of this Court.

his pants and attempting to stick his fingers inside the waistband of his pants and underwear. When Det. Jones told him to stop, Det. Armstrong looked over and saw the same activity. After Det. Jones again saw Mothersell attempting to reach down into the back of his pants, he and Det. Armstrong took him into the bedroom and strip searched him. They both saw a piece of plastic protruding from between Mothersell's buttocks, which they retrieved and which was found to contain crack cocaine. Det. Armstrong also testified, based on his experience and his observations of Mothersell at the bedroom window and then inside the apartment, that Mothersell was high on crack. Although the question of whether the strip search of plaintiff was constitutionally justified is not now before the Court, this summary of the testimony regarding the facts surrounding Mothersell's strip search illustrates the highly individualized nature of Mothersell's claim, and supports a determination that the claim of each prospective class member depends on individualized proof rather than on common contentions capable of classwide resolution.

The Court has also reviewed the SPD Annual Reports from 2005 through 2009; data printouts regarding the Special Investigations Division; the "2009 Police Officer In-Service Training Legal Updates"; the CRT Search & Seizure Review Spring 2009; training materials provided in connection with Det. Gilhooley's June 11, 2010 training entitled "Legal Issues at SPD"; and the SPD Rules and Regulations in effect from February 22, 2006 through August 19, 2009, in particular sections 20 and 73. These contain no evidence of a blanket strip search policy such as plaintiff alleges. The CRT Search & Seizure Review Spring 2009 (prior to the decision in *People v. Mothersell*) states that a visual cavity search "cannot be routinely undertaken as incident to all drug arrests or permitted under a police department's blanket policy that subjects

persons suspected of certain crimes to these procedures. There must be particular, individualized facts known to the police that justify subjecting an arrestee to these procedures."[12]

The Court has also considered the April 15, 2010 memorandum, "All Persons Present Search Warrants," from Assistant District Attorney Michael A. Ferrante to SPD Capt. Tim Gay written two weeks after the New York Court of Appeals decided *People v. Mothersell*. Ferrante advised that "you can no longer subject persons present at a search warrant [execution] to a [strip] search ... as a matter of course." This and a few similar statements by Ferrante arguably suggest that the SPD previously had a blanket strip search policy in connection with all-persons-present warrants. Viewed in the context of the memorandum, however, Ferrante's statements may also reasonably be construed as merely responding to the reference in *People v. Mothersell* to Det. Armstrong's suppression hearing testimony. They may also be construed as consistent with defendants' contention in responding to plaintiff's interrogatories that some officers assumed, prior to April 2010, that an all-persons-present warrant authorized the strip search of anyone present; that there was no consistent practice; and that officers often exercised individual discretion in deciding who would be strip searched "based on their observations of the appearance and demeanor of the persons present and the particular circumstances surrounding each execution." Ferrante's statements in this memorandum lend little support to plaintiff's allegation

_____

[12] Nor is plaintiff aided by the testimony that, prior to *People v. Mothersell*, "many" or "most" SPD search warrants relative to drug investigations included all-persons-present clauses. The prospective class members' rights to recovery in this action depend on whether they were improperly subjected to strip searches based on the presence of such clauses in the warrants, not on the wording of the warrants *per se*. Moreover, in some cases, the all-persons-present clause may have been proper. *See People v. Mothersell*, 41 N.Y.3d at 362-63 (observing that there could be circumstances in which a search warrant application would afford probable cause to infer that everyone present had upon their persons the items specified in the warrant, such that inclusion of an all-persons-present clause in a warrant would be constitutional).

that a blanket strip search policy and practice existed.  Moreover, in view of the extensive evidence that the officers considered individual factors in determining whom to search, even if plaintiff had proven that some or all defendants misunderstood the authority conferred by an all-persons-present warrant, such proof would not tend to show that the prospective class members were searched based on that misunderstanding.

In further support of the motion, plaintiff submits affidavits from Cruz Claudio, Nadine Williams, Emely Frias, Floyd Thompson, Alex Claudio, Jessica Esteras, and Reginald Blackshear, each claiming that he or she was subjected to a strip search by SPD officers.  The searches occurred in a variety of circumstances and residences on various dates between October 2006 and January 2010.  Although some affiants stated that the police told them they had a warrant, there is no competent evidence regarding the existence or terms of a search warrant or, if a warrant existed, the information in the underlying application.  Not one of these affidavits supports a finding that the affiant was searched based on an all-persons-present warrant issued without probable cause.  The evidence that the affiants were subjected to strip searches in residences during the proposed class period, without more, is not evidence of the existence of a common contention that is capable of classwide resolution.

The Court has considered the numerous other documents presented by plaintiff, and all other arguments raised.  The Court concludes that plaintiff has failed to demonstrate commonality by a preponderance of the evidence.

**Predominance – Rule 23(b)(3)**

For largely the same reasons, the Court concludes that plaintiff has failed to show by a preponderance of the evidence that the proposed class meets the "predominance" requirement,

that is, the requirement "that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Crim.P. 23(b)(3). The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "[T]he requirement is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)).

In *Amgen, Inc. v. Connecticut Ret. Plans and Trust Funds*, the Supreme Court recently upheld the certification of a class in a private securities fraud case. __U.S.__, 2013 WL 691001 (Feb. 27, 2013). In finding that the question of whether an alleged misrepresentation was "material" predominated over questions affecting individual members of the proposed class, the court found that "proof of materiality is [not] needed to ensure that the questions of law or fact common to the class will 'predominate over any questions affecting only individual members' as the litigation progresses." *Id.*, 2013 WL 691001 at *8 (quoting Fed.R.Civ.P. 23(b)(3)). It added that "there is no risk whatever that a failure of proof on the common question of materiality will result in individual questions predominating.... Instead, the failure of proof on the element of materiality would end the case for one and for all; no claim would remain in which individual reliance issues could potentially predominate." *Id.*

In the case at bar, as discussed above, plaintiff has not made a sufficient showing that the

prospective class members were strip searched based on the all-persons-present clause in the warrant rather than on individual facts known to the officers at the time of the search. Therefore, he has not shown that resolution of issues bearing on each prospective class member's claim can be achieved through generalized proof pertaining to the alleged blanket policy and practice regarding all-persons-present warrants, or that such issues are "more substantial than the issues subject only to individualized proof." *Myers*, 624 F.3d 547. To the contrary, even a resolution of the issues of the existence and unconstitutionality of the alleged blanket policy would not resolve a question common to the class; individual issues regarding the basis for each strip search would still predominate. *See Amgen*, 2013 WL 691001 at *8. The proposed class is not "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623.

The Court is aware that the fact that "a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones," and that "[a]s long as a sufficient constellation of common issues binds class members together, variations in the sources and application of a defense will not automatically foreclose class certification under Rule 23(b)(3)." *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010) (citations omitted). In the case at bar, however, the problem with the proposed class is more fundamental than variations in the sources and application of a defense; rather, the problem is the absence of a sufficient constellation of common issues binding the class members together in the first instance. Plaintiff has not demonstrated predominance.

**Injunctive or Declaratory Relief - Rule 23(b)(2)**

Plaintiff's reliance on Rule 23(b)(2) requires little discussion. This rule provides that a class action may be maintained if Rule 23(a) is satisfied and if "the party opposing the class has

acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Because the amended complaint seeks compensatory and punitive damages as well as injunctive and declaratory relief, the instant action cannot proceed as a Rule 23(b)(2) class action. As the Supreme Court made clear in *Wal-Mart*, "individualized monetary claims belong in Rule 23(b)(3)." 131 S.Ct. at 2558. The *Wal-Mart* court further rejected the notion that Rule 23(b)(2) can properly apply where there are individualized monetary claims if the injunctive claim "predominates" over the monetary claims. *Id.* at 2559. Further, plaintiff's reliance on *Floyd v. City of N.Y.*, 2012 WL 1868637 (S.D.N.Y. May 16, 2012) is misplaced; in *Floyd*, the sole relief sought was an injunction. Rule 23(b)(2) does not apply.

**CONCLUSION**

Having found that plaintiff has not demonstrated by a preponderance of the evidence that the requirements of commonality or predominance are met by the proposed class, the Court does not reach the other issues raised in the motion.

It is therefore

ORDERED that plaintiff's motion (Dkt. No. 80) to certify a class is denied.

IT IS SO ORDERED.

DATED: March 8, 2013
        Syracuse, New York

Honorable Norman A. Mordue
U.S. District Judge